**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-039** |
| **CHRIS BYARD** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, Robert E. Eckert, Assistant United States Attorney, and Meghan A. Farley, Special Assistant United States Attorney, respectfully files this sentencing memorandum regarding defendant Chris Byard.

**I.     BACKGROUND**

On January 31, 2023, a Grand Jury sitting in the Eastern District of Pennsylvania returned an indictment in case number 23-CR-039 against the defendant, Chris Byard, charging him with one count of possession of a firearm by a felon, in violation of Title 18, United States Code, Section 922(g)(1). On June 12, 2024, Byard pled guilty to Count One of the indictment in accordance with a guilty plea agreement. ECF 38. A sentencing hearing has been scheduled for November 21, 2024, at 9:00 a.m., before the Honorable Chad F. Kenney.

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a sentence of 37 months' imprisonment, three years of supervised release, and a $100 special assessment. For the reasons outlined below, the government urges the Court to adopt the guideline range determined by the Probation Office and sentence the defendant to a within guideline sentence of 37 months.

## II.     FACTS OF THE CASE

On January 10, 2023, shortly before 5:45 pm, two on-duty Philadelphia Police Officers were driving in their patrol vehicle westbound on Baynton Street in the 14th District.  At the intersection of Armat and Baynton Streets, they observed a white Nissan Maxima with heavy tint traveling eastbound on Baynton fail to stop at a stop sign.  The Officers activated their lights and made a U turn to follow behind the Nissan to stop it for failure to stop at the sign.  The Nissan took off at a high rate of speed on Armat Street, passing a car in front of it.

The driver of the Nissan was later identified as the defendant, Chris Byard.  Over the next few minutes, Byard continued driving away at a high rate of speed.  The Officers followed him, though they did not engage in a chase.  They periodically lost sight of him as they attempted to follow Byard in the Nissan.  The Officers observed Byard travel north up East Locust Lane – the wrong way on a one-way street.  The Officers continued following Byard but continued to intermittently lose sight of him.  They saw him at points on Musgrave Street, Chew Avenue, and around the intersection of Broad Street and Grange Avenue.

Minutes after the Officers observed Byard run the stop sign and attempted to keep his car in their view, they came across his Nissan again after hearing a crash.  They drove to that area where the noise came from and observed that Byard's vehicle appeared to crash into a number of cars, including a Jeep at the corner of 16th Street and W Grange Avenue.

The Officers observed Byard get out of the vehicle and flee on foot, and one of the officers followed him on foot.  After a pursuit of approximately 10 seconds, an officer pulled Byard to the ground.  At the same time, the other officer parked the patrol vehicle and the other officer handcuffed the defendant.

The officers then returned to the defendant's Nissan and attempted to look into the

Nissan's windows but could not see through the windows because they were tinted, and it was dark.  The driver's side door and hood of the car were damaged from the crash.  One of the officers opened the passenger front door, looked around, and observed a firearm on the floor on the passenger side in plain view.  As the officers spoke to one another, one of the other individuals involved in the crash approached them and informed them that one of the passengers in the Jeep was pregnant and requested that they call for an ambulance.

Officers later discovered that the defendant had the keys to the Nissan clipped to his belt.  Once a Sergeant arrived on scene, they directed that the officers recover the firearm from the vehicle.  The recovered firearm was a Black Glock 20, 10 mm, serial # BVAP809, loaded with 16 live rounds of ammunition.

ATF personnel later interrogated the defendant.  After being read his Miranda warnings, the defendant waived them and agreed to participate in an audio and video recorded interview.  The defendant acknowledged that he is not permitted to purchase or possess firearms due to his felony convictions and admitted to possessing the firearm recovered from his vehicle.

III.    **LEGAL STANDARD**

This Court must follow a three-step process when sentencing a defendant: (1) calculate the defendant's guideline sentence, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a)

factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a sentence of 27 months' imprisonment, three years of supervised release, and a $100 special assessment.

## IV.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence

The total maximum sentence that this Court can impose is 15 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

### B.    Sentencing Guidelines Calculation

The presentence report calculates the defendant's guideline range at 33-41 months in prison. The presentence report correctly determined that the base offense level for a violation of 18 U.S.C. § 922(g)(1), under § 2K2.1 of the Sentencing Guidelines, is 20 because the firearm possessed by the defendant was capable of accepting a large capacity magazine and the defendant was prohibited from possessing firearms. PSR ¶ 21. In addition, the offense level is adjusted two levels upward for reckless endangerment during flight. PSR ¶ 25; USSG § 3C1.2. After three levels are subtracted for acceptance of responsibility, the total offense level is 19. PSR ¶ 30.

The defendant objected to application of the enhancement for reckless endangerment. PSR pg. 24. The government echoes the response of the Probation Officer noting that the defendant refused to pull over and "fled at a high rate of speed," and specifically noting that "the

officers observed Byard travel north up East Locust Lane – the wrong way on a one-way street."

PSR pg. 24; ECF 37 at 2, COP Memo.  Following the defendant reckless driving during his flight

form the police, the defendant crashed into a number of cars at an intersection, including one

occupied by a pregnant woman who later requested the assistance of an ambulance, where Byard

then fled on foot.  ECF 37 at 3.  Not only did Byard reckless endanger others during his flight

from the police, but his actions also directly caused injuries to other people.  As the language of

the enhancement states, because Byard "recklessly created a substantial risk of death of serious

bodily injury to another person in the course of fleeing from a law enforcement officer, increase

by 2 levels."  USSG § 3C1.2. The unpublished Fifth Circuit case cited by the defendant, *United

States v. Lackey*, is unavailing and should not persuade the Court.[1]  There, the court found,

unremarkably, that a "brief, below speed-limit pursuit" where the only evidence of reckless

conduct, was "Lackey's failure to come to complete stop before making a turn at a red light,

shortly before he pulled into the parking lot where he stopped the vehicle and submitted to arrest

without incident" could not be more different from the facts of this case.  Def. Objection, see

PSR pg. 24 citing *United States v. Lackey*, 617 Fed. Appx. 310 (5th Cir. 2015).

The defendant has the following criminal convictions in the Philadelphia County Court of

Common Pleas: on May 2, 2018, the defendant was sentenced, for carrying a firearm without a

license and receiving stolen property.  The defendant was initially sentenced to a term of four

years' probation but was later sentenced to 90-180 days of imprisonment after violating his

probation, accordingly two criminal history points are awarded.  PSR 32.  On January 21, 2020,

---

[1] The other case cited by the defendant, *United States v. Brown*, finds the enhancement
applicable and is likewise unavailing.  See PSR pg. 24.

the defendant was also sentenced in the Burlington County New Jersey Superior Court after pleading guilty to burglary.  The defendant was sentenced to a term of three years' probation, accordingly one point is added.  PSR ¶ 33.  A criminal history score of three establishes a criminal history category of II.  PSR ¶ 40.

The applicable guideline range for an offense level of 19 and a criminal history category of II is 33-41 months' imprisonment.  USSG Sentencing Table.

## V.  GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING

### A.  Sentencing Factors

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the parties' recommended sentence is an appropriate sentence in this case.  The Court must consider all of the sentencing considerations set forth in § 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

**B.    Application**

There is no need for restitution in this case.  The remaining § 3553(a) factors will be discussed in turn.

### 1.    The Nature and Circumstances of the Offense

This was a serious offense.  Notwithstanding Byard's criminal history, which includes a conviction for a firearms offense, he again possessed a firearm in Philadelphia.  Given the serious crisis in Philadelphia concerning violent crimes being committed with firearms, the defendant's decision to possess a loaded firearm, notwithstanding his criminal history is a serious crime.  And here, where the defendant decided to place the lives of others in danger by fleeing from the police rather than face the consequences of his actions, and possessing a firearm while on probation, the defendant has earned a within guideline sentence.

### 2.    The History and Characteristics of the Defendant

The defendant is a 26-year-old male from Philadelphia who had been living in Philadelphia at the time of his arrest.  The defendant was living with his longtime girlfriend and his two children in Philadelphia at the time of his arrest.  PSR ¶ 57.  He shares one child with his girlfriend and is a father figure of her child from a previous relationship.  PSR ¶ 57.  As set forth in the PSR, it is not clear where the defendant will reside upon his release from custody.  PSR ¶ 60.  While the defendant has a notable criminal history with an apparent proclivity towards possessing firearms, he is young enough that he can be rehabilitated and begin to lead a law-abiding lifestyle, if he wishes.

**3.      The Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for Law, and Provide Just Punishment**

There is a strong need to impose a custodial sentence that reflects the seriousness of this offense, promotes respect for U.S. laws, and provides just punishment.  The City of Philadelphia is plagued by gun violence.  It is imperative, therefore, that the defendant's conduct be punished accordingly for his possession of a firearm in this case.  The defendant's conduct in this case demonstrates that he has no respect for the laws of this country, and his conduct supports a sentence of imprisonment.  The government's requested term of incarceration, 37 months, which is within the applicable guideline range, will help to instill respect for the law and reflect the seriousness of the case upon the defendant.

**4.      The Need for Adequate Deterrence and Protection of Public**

The need for adequate deterrence of this type of crime is great.  Given the prevalence of gun violence in this region, the need to deter others from similar crimes is especially important.  Furthermore, the recommended sentence protects the public from further crimes by the defendant, for at least as long as he remains in prison.  The requested 37-month term of incarceration and three-year period of supervised release should deter the defendant from future crime, particularly gun crime.  With the recommended periods of incarceration and supervised release, the defendant will effectively be under court related oversight for a lengthy period of time, more than five years, which will aid in his deterrence.  Facing the prospect of reincarceration for any violation, and potential future federal prosecution for any new offense, the defendant will, hopefully, begin to lead a law-abiding lifestyle.

**5.      The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment**

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or additional treatment that cannot be adequately addressed by the Bureau of Prisons during incarceration.  Should the defendant wish to avail himself of the Bureau of Prisons', or U.S. Probation Office's, offerings for education, training, or treatment, the agreed upon sentence will not inhibit those efforts.

**6.      The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants**

Adherence to the recommended guideline range is generally the best course for assuring that the defendant's sentence is consistent with those imposed nationwide on similarly-situated offenders.  Here, in accordance with the terms of the plea agreement, the government requests that this Court impose a sentence at the mid-point of the applicable range, 37 months.

## VII.    CONCLUSION

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a sentence of 37 months' imprisonment, three years of supervised release, and a $100 special assessment in this case.  For the reasons outlined above, the sentence requested by the government is sufficient but not greater than necessary to meet the goals of sentencing.

Respectfully submitted,

Jacqueline C. Romero
United States Attorney


/s Robert E. Eckert
Robert E. Eckert
Assistant United States Attorney

Meghan A. Farley
Special Assistant United States Attorney

Date: November 14, 2024

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum has been served by electronic mail upon the following:

Carina Laguzzi
cl@laguzzilaw.com

<u>/s Robert E. Eckert</u>
Robert E. Eckert
Assistant United States Attorney

Date: November 14, 2024